UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                              :

DENNIS BELL,                              :

                         Petitioner,      :

                                              :

               -against-                 :        11-CV-6175 (DGL)

                                            :

PATRICK GRIFFIN,                   :

                                            :

                        Respondent.    :
------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO
## THE PETITION FOR A WRIT OF HABEAS CORPUS

ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York
Attorney for Respondent
120 Broadway, 12th floor
New York, New York 10271
(212) 416-8785

ALYSON J. GILL
PAUL M. TARR
Assistant Attorneys General
    Of Counsel

October 7, 2011

## TABLE OF CONTENTS

PRELIMINARY STATEMENT...............................................................................1

FACTUAL AND LEGAL BACKGROUND....................................................2

A.  Introduction ..........................................................................................2
B.  The Trial.................................................................................................2
    1.  The People's Case .......................................................................2
    2.  Petitioner's Case .........................................................................5
    3.  The Verdict and Sentencing ......................................................5
C.  The Direct Appeal ................................................................................5
D.  The Petition before this Court..............................................................7
E.  Timeliness ..............................................................................................8
F.  Exhaustion .............................................................................................9
G.  Standard of Review.............................................................................12

ARGUMENT

    POINT I
    PETITIONER'S PROSECUTORIAL MISCONDUCT CLAIM IS
    PARTIALLY    BARRED    BY    AN    ADEQUATE    AND
    INDEPENDENT   STATE   LAW   GROUND,   AND   THE
    APPELLATE  DIVISION'S  DENIAL  OF  THIS  CLAIM  WAS
    NEITHER   CONTRARY   TO,   NOR   BASED   UPON   AN
    UNREASONABLE  APPLICATION  OF,  SUPREME  COURT
    LAW..............................................................................................15
    A.  The Parties' Summations and the Court's Jury Instructions....................16
    B.  Petitioner's Prosecutorial Misconduct Claim is Partially Barred
        from Habeas Review by an Adequate and Independent State Law
        Ground .................................................................................18
    C.  Petitioner's Prosecutorial Misconduct Claim Does Not Entitle
        Him to Habeas Relief ..............................................................21

    POINT II
    PETITIONER'S   UNEXHAUSTED   WEIGHT   OF   THE
    EVIDENCE  CLAIM  IS  NOT  COGNIZABLE  ON  FEDERAL
    HABEAS REVIEW .......................................................................29

CONCLUSION ............................................................................................30

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                              :
DENNIS BELL,                                  :
                                              :
                        Petitioner,           :
                                              :
        -against-                             :         11-CV-6175 (DGL)
                                              :
PATRICK GRIFFIN,                              :
                                              :
                        Respondent.           :
---------------------------------------------------------------x

## PRELIMINARY STATEMENT

Dennis Bell ("petitioner") brings this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights.  His state custody arises from a judgment entered on June 7, 2006, in the New York State Monroe County Court, convicting him, following a jury trial, of Murder in the Second Degree (New York Penal Law ("Penal Law") § 125.25(1)), and Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03).  Petitioner was sentenced to a prison term of 25 years to life for the second-degree murder charge and to a determinate prison term of 15 years, followed by five years of post-release supervision, for the second-degree criminal possession of a weapon charge.  These sentences were set to run consecutively to an unrelated sentence that petitioner was then already serving. On October 2, 2009, the Appellate Division, Fourth Department, unanimously affirmed the conviction, and on January 6, 2010, the Court of Appeals denied leave

to appeal.  *People v. Bell*, 66 A.D.3d 1478 (4th Dept. 2009), *lv. denied*, 13 N.Y.3d 937 (2010).   As a result of this judgment, petitioner is incarcerated in the Southport Correctional Facility in Pine City, New York.

## FACTUAL AND LEGAL BACKGROUND

### A.   Introduction

On June 11, 2003, shortly after 10:00 p.m., in Rochester, New York, petitioner and an unidentified man approached petitioner's former friend, Calvin Bryant, while Bryant sat in his front yard with three of his friends.  After the men exchanged words, petitioner shot Bryant, and despite a bullet wound to his head, Bryant got up and ran toward his house, as petitioner chased after him and continued to shoot.  Bryant died of gunshot wounds to his head and neck.  Two of Bryant's neighbors, who knew both Bryant and petitioner, witnessed the shooting from across the street, and recognized petitioner as the shooter.

On June 20, 2005, a Monroe County grand jury charged petitioner with Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree.

On March 27, 2006, petitioner proceeded to trial before the Hon. Dennis M. Kehoe and a jury.

### B.   The Trial

#### 1.   The People's Case

Before June of 2003, petitioner and Calvin Bryant had been friends.  At some point, however, they had a falling out and stopped speaking to each other.  (T:

2

457, 513-14, 522).[1]  On the evening of June 11, 2003, Bryant and three of his friends were sitting in the front yard of Bryant's house on 573 Maple Street.  (T: 279-81, 285, 295, 429, 463, 520).  At approximately 10:20 p.m., petitioner, who was wearing a grey hooded sweatshirt, and an unidentified man in a black hooded sweatshirt, approached Bryant and his friends.  The men began to yell at each other, and then petitioner pulled out a gun and repeatedly fired at Bryant.  Sparks from the gun illuminated petitioner's face.  Bryant's three friends ran away in different directions.  (T: 287-89, 432-33, 444-46, 457, 464-65, 483-84, 490-92, 495, 499).

Bryant, despite a bleeding head wound, got up and ran toward his house.  Petitioner ran after Bryant, continued to fire, and shot him in the head and neck.  After reaching his house, Bryant collapsed inside from the fatal gunshot wounds.  (T: 318-20, 368-69, 373, 434-36, 467).  Petitioner then ran across Maple Street and through a driveway between two houses, and left the area.  (T: 289, 468, 496).

Meanwhile, 14 year-old Melissa Rodriguez was at home across the street from the shooting, at 566 Maple Street.  There was a street light directly in front of her home. (T: 278, 283-84).   From her second-story bedroom window, she saw petitioner and his companion approach Bryant and his friends, and petitioner shoot Bryant.  (T: 279-81, 285, 295, 429, 463, 520).  Rodriguez knew both petitioner and Bryant, who was a friend of her brother's.  (T: 279-80, 304).  Rodriguez saw petitioner's face during the shooting, and again as he ran across Maple Street and

---

[1]     Parenthetical citations with a "T:" refer to the trial transcript, and parenthetical citations with an "S:" refer to the sentencing transcript.

through the driveway, which was alongside her house.  (T: 289-90).

At the same time, at 562 Maple Street, which was on the same side of the street as Rodriguez's house, Yolanda Elliott was sitting on the porch with her upstairs neighbor, Carrie Preston, along with their landlord and his friend.  (T: 426-28, 459).  From the porch, Elliott and Preston witnessed the shooting.  Elliott knew both Bryant and petitioner, who had socialized with her brothers.  (T: 456-57, 461, 482).  She saw petitioner's face and recognized him as he ran past her house and through the driveway alongside Rodriguez's house.  (T: 469, 481-82, 489-90).[2]  Then, Elliott called 911 on her cell phone from the porch.  (T: 470, 485).[3]

When the police arrived at the scene, Elliott did not inform them that she saw petitioner shoot Bryant.  (T: 471).  Later that night, however, when someone informed Elliott that Bryant had died, Elliott told that person that petitioner was the shooter.  (T: 473).  Rodriguez did not report her observations to the police on the night of the shooting because she was reluctant to get involved.  (T: 291).

On July 21, 2003, Investigator Thomas Cassidy of the Rochester Police Department visited Rodriguez's house to speak with her regarding an unrelated homicide for which her boyfriend, Israel Miranda, had been arrested.  When Investigator Cassidy arrived at Rodriguez's house, he noticed that the location where Bryant was shot was across the street, and decided to ask Rodriguez about

---

[2]   Elliott and Preston testified that petitioner wore his hood up or partially up during the shooting, but Rodriguez was not sure if petitioner wore his hood.  (T: 298, 444-45, 481-82).

[3]   Preston testified that after petitioner left the scene, she ran back into the house to tell Elliott, who was already inside, to call 911.  (T: 437, 446, 449).

that case as well.  That day, Rodriguez told the investigator that petitioner had

shot Bryant.  (T: 301-02, 353-57).  On July 23, 2003, Elliott was interviewed by the

police and informed them that petitioner was the shooter.  (T: 471-73, 487-89).

### 2.        Petitioner's Case

Petitioner did not present any witnesses at trial.

### 3.        The Verdict and Sentencing

On May 11, 2006, the jury found petitioner guilty of both counts.  (T: 609-

10).  On June 7, 2006, the court orally denied petitioner's motion to set aside the

verdict on the grounds that it was against the weight of the evidence and the

prosecutor improperly vouched for the People's witnesses in her summation.  (S: 2-

3).  Then, at the start of the sentencing hearing, the People declined to file a second

violent felony offender statement.  (S: 4).  For the second-degree murder conviction,

the court sentenced petitioner to a prison term of 25 years to life   (S: 10-11).  For

the second-degree criminal possession of a weapon conviction, the court sentenced

petitioner to a determinate prison term of 15 years, to be followed by five years of

post-release supervision.  (S: 11-12).  These sentences were set to run consecutively

to an unrelated sentence that petitioner was then serving for attempted second-

degree robbery.  (S: 12).  Exhibit A.

## C.      The Direct Appeal

On direct appeal, petitioner was represented by Grazina Myers, Esq., of the

Monroe County Public Defenders' Office, who filed a brief in the Appellate Division,

raising two claims: (1) the prosecutor committed misconduct during summation

when she (a) vouched for the credibility of the witnesses by stating that they were credible, accurate, and brave for testifying, and showing a Power Point presentation that called them truthful, credible, and accurate, (b) argued that truth and justice were on the side of the prosecution, and (c) claimed that a pole depicted in a photographic exhibit that may have obstructed the witnesses' views was not there at the time of the shooting (Exhibit B at 5-10); and (2) the verdict was against the weight of the evidence (*id.* at 11-14).   The People filed an opposition brief.  Exhibit C.

On October 2, 2009, the Appellate Division unanimously affirmed the conviction.  *People v. Bell,* 66 A.D.3d 1478.  Exhibit D.  Initially, the Appellate Division held that the prosecutor had improperly vouched for the credibility of the eyewitnesses, and that the trial court compounded this error by allowing the prosecutor "to enhance the effect of her improper comments by using computer slides."  66 A.D.3d at 1479.  Further, the Appellate Division held that during her summation, the prosecutor mischaracterized one of the photographs in evidence. *Id.*   Nevertheless, the Appellate Division concluded that these "instances of misconduct" did not deprive petitioner of a fair trial because the evidence of his guilt was overwhelming and "there [was] no reasonable possibility" that these errors contributed to his conviction.   *Id.* (citation omitted).   Also, the Appellate Division held that because petitioner failed to object to the remainder of the contested summation comments, his claim regarding those comments was unpreserved, and the court declined to review those comments in the interest of

6

justice.  *Id.*  Finally, the Appellate Division rejected petitioner's claim that the verdict was against the weight of the evidence.  *Id.*

Petitioner's counsel sought leave to appeal to the Court of Appeals and submitted petitioner's Appellate Division brief in support of the application, without referencing any particular argument therein.   Exhibit E.   The People opposed leave.   Exhibit F.   On January 6, 2010, the Court of Appeals denied leave. *People v. Bell*, 13 N.Y.3d 937 (2010).   Exhibit G.

## D.     The Petition before this Court

In his petition dated April 1, 2011, petitioner raises two claims: (1) the prosecutor committed misconduct during summation when she (a) vouched for the credibility of the witnesses by stating that they were credible, accurate, and brave for testifying, and showing a Power Point presentation that called them truthful, credible, and accurate, (b) argued that truth and justice were on the side of the prosecution, and (c) claimed that a pole depicted in a photographic exhibit was not there at the time of the shooting;[4] and (2) the verdict was against the weight of the evidence because: (a) neither of the People's witnesses who identified petitioner as the shooter informed the police immediately after the crime; (b) the People's witnesses viewed the crime in poor lighting and from a distance; (c) one of the

---

4     The petition states only that the prosecutor improperly bolstered the credibility of the eyewitnesses during her summation, and references attached pages 4a and 4b in support of this claim, but the petition contains no such attachments. Habeas Pet., ¶ 13, Dkt. No 1.  Petitioner's argument in support of his bolstering claim is contained in pages 7a and 7b of the "Continuation of Exhibits," which is a separate petition raising the same claims that was filed on April 7, 2011, but which the Clerk of the Court neglected to include on the docket until October 4, 2011. *See* Dkt. No 10.

eyewitnesses, Rodriguez, testified that the crime took place over the course of five minutes but she was only able to see petitioner's face for a few seconds, and she could not remember whether petitioner wore the hood of his sweatshirt at the time; (d) another witness, Elliott, testified that she recognized petitioner as the shooter despite the fact that he was wearing his hood during the shooting; and (e) although Elliott testified that she called 911 from her porch, Preston testified that Preston ran into the house to tell Elliott to call 911.  Habeas Pet., ¶ 13.

## E.   Timeliness

The petition is timely.  Under 28 U.S.C. § 2244(d)(1)(A), a federal habeas corpus petition must be filed within one year of the date on which the petitioner's state court criminal conviction becomes final.  A conviction becomes final for statute of limitations purposes after the time in which to seek a writ of certiorari from the United States Supreme Court expires.  *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001).  In this case, the Court of Appeals denied petitioner leave to appeal on January 6, 2010.  His conviction became final ninety days later, on April 6, 2010, when his time to seek a writ of certiorari expired.  S*ee McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003); *cf. Clay v. United States*, 537 U.S. 522, 532 (2003). Petitioner had one year from that date, or until April 6, 2011, to file his petition. 28 U.S.C. § 2244(d)(1)(A).  Therefore, the habeas petition, which is dated April 1, 2011, is timely.[5]  28 U.S.C. § 2244(d)(2).

---

5    The original petition was signed on April 1, 2011 and filed with this Court on April 7, 2011.  However, with respect to pro se and incarcerated habeas petitioners, the "mailbox rule" applies: the petition is deemed filed on the date it is given to

## G.    Exhaustion

Petitioner has exhausted one of his two claims.  It is well settled that a federal court may not consider the merits of a claim unless that claim was fairly presented to the "highest state court from which a decision can be had." *Daye v. Attorney Gen.*, 696 F.2d 186, 190 n.3 (2d Cir. 1982) (*en banc*); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971).  A petitioner may apprise the state courts of the constitutional nature of his claims by explicitly arguing that a federal constitutional right was violated, either by citing to the Constitution, or "even without citing chapter and verse of the Constitution" by: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Smith v. Duncan*, 411 F.3d 340, 348 (2d Cir. 2005) (citing *Daye*, 696 F.2d at 194).

Here, petitioner has exhausted his claim that the prosecutor improperly vouched for the People's witnesses during her summation.  Petitioner raised his vouching claim on direct appeal, and then raised the claim in his leave application. Exhibits B at 5-10, E.  Although petitioner failed to reference federal constitutional authority, claims of prosecutorial misconduct are "well within the mainstream of

_____

correctional authorities for mailing to the court – in this case, April 1, 2011.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Noble v. Kelly*, 246 F.3d 93 (2d Cir.), *cert. denied*, 534 U.S. 886 (2001).

constitutional litigation." *See Prince v. Ercole*, 08 Civ 5197, 2009 WL 1172851, *9 (E.D.N.Y. May 1, 2009) (*quoting Daye,* 696 F.2d at 194; citing *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir. 1986)).   Also, petitioner asserted on direct appeal that the contested summation comments deprived him of a fair trial.   Exhibit B at 5. Courts within this Circuit have held that fair trial claims based on improper prosecutorial summation call to mind constitutional issues of due process. *Williams v. Duncan*, 03 Civ 568, 2007 WL 2177075, *25 n.24 (N.D.N.Y. July 27, 2007) (citing *Walker v. Bennett,* 262 F.Supp.2d 25, 33 (W.D.N.Y. 2003)).   Therefore, petitioner's prosecutorial misconduct claim is exhausted.

Petitioner's weight of the evidence claim is unexhausted because, although he raised it on direct appeal, he argued it in state statutory and case law terms only.   Exhibit B at 11-14.   Further, this claim could not have been framed in federal constitutional terms because, as set forth in Point II, below, it is based in state law and is thus not cognizable on habeas review.   *See Moore v. Greiner*, 02 Civ 6122, 2005 WL 2665667, *18 n. 8 (S.D.N.Y. October 19, 2005) (weight of the evidence claims are not federal in nature because they arise from C.P.L. § 470.15(5), which permits state courts to reverse or modify convictions that are against the weight of the evidence).   Therefore, this claim was not "fairly presented" to the state courts on direct appeal, and is unexhausted.   *Edwards v. Marshall*, 589 F. Supp. 2d 276, 285, 290 (S.D.N.Y. 2008).

Petitioner's unexhausted weight of the evidence claim is procedurally barred because he can no longer raise it in any state forum.   Petitioner cannot return to

10

state court to exhaust his claim because he has already had the one direct appeal to which he was entitled.   Exhibits B, E.   *See Grey v. Hoke*, 933 F.2d at 120-21; *People v. Spence*, 82 N.Y.2d 671 (1993); 22 N.Y.C.R.R. §§ 600.8(b), 500.10 (McKinney 2008).   Petitioner would be unable to raise this claim in a C.P.L. § 440.10 motion, because the provision precludes relief for claims that have been raised on appeal, and bars new record-based claims that could have been raised on direct appeal, but were not.  C.P.L. §§ 440.10(2)(a), (c).[6]

As a result, the unexhausted weight of the evidence claim should be deemed exhausted but procedurally defaulted.  *See Ramirez v. Attorney General*, 280 F.3d 87, 94 (2d Cir. 2001).  This Court may consider the merits of this claim only if petitioner shows: (1) cause for the default and actual prejudice; or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice. *Aparicio v. Artuz*, 269 F.3d 78, 89-90 (2d Cir. 2001).  Cause can be established by showing that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," or that petitioner received constitutionally ineffective assistance of counsel.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the complained of constitutional

---

6      Petitioner also cannot seek review of the claims via a petition for a writ of error coram nobis or a state petition for writ of habeas corpus.  *See People v. Bachert*, 69 N.Y.2d 593, 598 (1987) (coram nobis relief only available for violations of constitutional rights not appearing on the record on direct appeal, such as claims of ineffective assistance of appellate counsel); *People ex rel. Keitt v. McMann*, 18 N.Y.2d 257, 262 (1966) (state writ of habeas corpus unavailable where claim could have been raised on direct appeal).

violation.  *Strickler v. Greene*, 527 U.S. 263, 289 (1999).

Petitioner has made no attempt to establish either cause or prejudice as to his unexhausted claim.  Thus, this Court need not even consider whether petitioner has been prejudiced by the procedural default.  *See McCleskey v. Zant*, 499 U.S. 467, 502 (1991).  Also, petitioner has not proffered evidence that would establish a miscarriage of justice, *i.e.*, that he is actually innocent.  *Aparicio v. Artuz*, 269 F.3d at 90.  *See Coleman v. Thompson*, 501 U.S. 722, 748 (1991) ("[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default").  In any event, as demonstrated in Point II, below, the failure to consider the defaulted claim will not result in a fundamental miscarriage of justice or in any way prejudice petitioner because the claim is not cognizable on habeas review.  *See Murray v. Carrier*, 477 U.S. at 495.

## H.    Standard of Review

For claims adjudicated on the merits by a state court, the deferential standard of review codified in AEDPA applies.  A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(1)-(2).  AEDPA sets a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which

demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. __, 131 S. Ct. 1388, 1398 (2011) (*quoting Harrington v. Richter*, 537 U.S. __, 131 S. Ct. 770, 786 (2011) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). Even where the state court offers no reason for its decision, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 778.

With respect to the "contrary to" clause, the writ may issue in two circumstances: first, if the state court decision "applies a rule that contradicts the governing [Supreme Court] law"; and second, if the state court decision addresses a set of facts "materially indistinguishable" from a relevant Supreme Court case and arrives at a result different to that reached by the Court. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). The "clearly established Federal law" refers to Supreme Court holdings as of the time of the relevant state court decision. *See Williams*, 529 U.S. at 412.

A state court decision involves an "unreasonable application" of Supreme Court precedent when the state court either "identifies the correct governing legal rule" from the Supreme Court's cases but "unreasonably applies it to the facts" of the case, or "unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. The Supreme Court has cautioned that under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its

13

independent judgment that the state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411; *Bell v. Cone*, 535 U.S. 685, 699 (2002). "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," *Woodford*, 537 U.S. at 25, which is "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

AEDPA merely "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents. It goes no farther." *See also Richter*, 131 S. Ct. at 786. Indeed, "[28 U.S.C. §] 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id*.

Moreover, the Supreme Court's AEDPA jurisprudence makes "clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004); *see also Pinholster*, 131 S. Ct. at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."). Also, this Court must apply a "presumption of correctness" to factual determinations made by the state courts, and petitioner bears the burden of rebutting that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Schriro*, 550 U.S. at 473-74; *Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir. 2001); *see Whitaker v. Meachum*, 123 F.3d 714,

14

715 n.1 (2d Cir. 1997) (deference will be given to factual findings by both state trial and appellate courts).  Further, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## ARGUMENT

### POINT I

**PETITIONER'S PROSECUTORIAL MISCONDUCT CLAIM IS PARTIALLY BARRED BY AN ADEQUATE AND INDEPENDENT STATE LAW GROUND, AND THE APPELLATE DIVISION'S DENIAL OF THIS CLAIM WAS NEITHER CONTRARY TO, NOR BASED UPON AN UNREASONABLE APPLICATION OF, SUPREME COURT LAW.**

Petitioner claims, as he did on direct appeal (Exhibit A at 5-10), that during her summation, the prosecutor committed misconduct when she (a) vouched for the credibility of the witnesses by stating that they were credible, accurate, and brave for testifying, and showing a Power Point presentation that called them truthful, credible, and accurate, (b) argued that truth and justice were on the side of the prosecution, and (c) claimed that a pole depicted in a photographic exhibit was not there at the time of the shooting.  Habeas Pet., ¶13; Continuation of Exhibits at 7a-b, Dkt. No. 10.  The Appellate Division held that the prosecutor had indeed vouched for the witnesses, the trial court compounded this error by allowing the prosecutor "to enhance the effect" of the vouching by using computer slides, and the

prosecutor also mischaracterized the photograph. *People v. Bell,* 66 A.D.3d at 1479.  Exhibit D.  However, the Appellate Division held that these errors did not deprive petitioner of a fair trial because the evidence of his guilt was overwhelming. *Id.*  Further, petitioner's claim regarding the remainder of the contested comments on summation was unpreserved, and the Appellate Division declined to review those comments. *Id.*  As explained below, petitioner's prosecutorial misconduct claim is partially barred by an adequate and independent state law ground, and the Appellate Division's decision denying the claim was neither contrary to, nor based upon an unreasonable application of, Supreme Court law.  28 U.S.C. § 2254(d)(1).

A.      **The Parties' Summations and the Court's Jury Instructions**

During his summation, petitioner's counsel argued that petitioner had been misidentified by emphasizing that the eyewitnesses' testimony was inconsistent and unreliable, and the flash from petitioner's gun provided insufficient light for the eyewitnesses to see petitioner's face.  (T: 538-45).  Counsel further supported his argument by highlighting important discrepancies between the witness' testimony.  Counsel stated that Elliott testified that petitioner had worn his hood during the shooting, Preston testified that the hood was halfway up, and Rodriguez couldn't remember if the hood was up or down.  (T: 539).  Counsel further pointed out that the eyewitnesses were too far away from the shooting to see petitioner, and their view was obstructed by trees (T: 540), Elliott could only have seen Bryant's back during the shooting (T: 541), and Elliott's testimony that she called

16

911 from her porch was contradicted by Preston's testimony that Elliott went inside the house to call 911 (T: 542-43).   Additionally, petitioner's counsel challenged Rodriguez's credibility because she could not remember certain details of the events surrounding the shooting.  (T: 545).

During the People's summation, the prosecutor described two of the People's eyewitnesses, Rodriguez and Elliott, as credible and accurate, and brave for their willingness to testify.   (T: 553, 558-59, 561).   The prosecutor emphasized their bravery by stating that these women had nothing to gain from testifying except "fear," because they lived on a street where people shoot others without bothering to cover their faces.  (T: 549, 551, 558, 567).   After the trial court overruled petitioner's counsel's objection, the prosecutor showed the jury PowerPoint slides that summarized evidence while also describing Rodriguez and Elliott as truthful, credible, and accurate.  (T: 547-48).  Exhibit H.  The prosecutor also argued, over petitioner's counsel's objection, that a white pole on Elliot's porch depicted in a photographic exhibit was not there on the night of the shooting and was probably erected by the police after the incident.  (T: 561-62).  Finally, the prosecutor asked the jury to "render a verdict that speaks the truth, a verdict of guilty."  (T: 567).

During the jury charge, the court instructed the jury that the summations were not evidence, and the jury could reject any argument that it found to be unreasonable or illogical.  (T: 572-73, 576).  The court also stated that petitioner was presumed innocent and the People had the burden of proving his guilt beyond a reasonable doubt  (T: 573-75, 580).  And, the court instructed the jury that it

could consider whether the witnesses were able to see or hear the events about which they testified, whether they could recall those events, and whether their testimony was plausible and consistent with other testimony in the case. (T: 577-78). Further, because the case relied on eyewitness testimony, the court instructed the jury that it should "focus principally" on the opportunity Rodriguez and Elliott had to focus on the appearance of the shooter, and whether these witnesses had the mental capacity to reason and to remember what they observed. (T: 581-84).

## B.   Petitioner's Prosecutorial Misconduct Claim is Partially Barred from Habeas Review by an Adequate and Independent State Law Ground

The Appellate Division held that petitioner's claim regarding the prosecutor's remark during summation that the jury should "render a verdict that speaks the truth" (T: 567) was unpreserved, and the court declined to review the claim. *People v. Bell*, 66 A.D.3d at 1479. A habeas court may not review a federal issue when the latest state court's ruling on the claim rested upon "a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). Although only a "firmly established and regularly followed state practice" may be interposed by a state to prevent subsequent review of a federal constitutional claim, *James v. Kentucky*, 466 U.S. 341, 348-49 (1984), the New York procedural rule applied by the Appellate Division in petitioner's case – that parties must preserve an issue with a contemporaneous objection – has been recognized as such a firmly established and regularly followed rule. *See Garcia v. Lewis*, 188 F.3d 71, 79-82

18

(2d Cir. 1999) (recognizing that New York has a well-established preservation rule that is regularly followed in a number of contexts); *see also Garvey v. Duncan*, 485 F.3d 709, 714 15 (2d Cir. 2007).[7]

Because the Appellate Division invoked this adequate and independent state law ground in denying the portion of petitioner's claim regarding the prosecutor's purported assertion that truth and justice were on the People's side, this Court is barred from considering the merits of that portion of the claim.  *See Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (when a state court explicitly invokes a state procedural bar rule, federal habeas review is precluded).  This is so regardless of whether the Appellate Division had crafted an alternative holding rejecting petitioner's claim on the merits.  *See Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005); *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996).

Moreover, application of the preservation rule in this circumstance satisfies the three factors set forth in *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003). *Cotto* held that the relevant factors to consider in determining the propriety of reliance on a procedural default are: "(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw

---

[7]     New York's preservation rule is codified in section 470.05(2) of the Criminal Procedure Law. *See Brea v. New York City Prob. Dept.*, 03 Civ 4822, 2004 WL 389011, *6 (S.D.N.Y. Mar. 3, 2004).   Under that rule, a claim of error can be preserved for appellate review in two ways: by a party making a specific protest at a time when the trial court has an opportunity effectively to correct the error; or by the court expressly deciding the issue in response to a protest by the party claiming error on appeal.  See Criminal Procedure Law § 470.05(2).

indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied' with the rule given 'the realities of trial,' and, thus, whether demanding perfect compliance with the rule would serve a legitimate governmental interest." *Id*.

As for the first *Cotto* factor, had petitioner objected to the prosecutor's summation remark calling for "a verdict that speaks the truth," the court could have addressed this issue.  Thus, compliance with the rule might have affected the court's reaction.   Next, New York courts have long required claims alleging prosecutorial misconduct during summation to be preserved in the trial court.  *See e.g., People v. Heide,* 84 N.Y.2d 943, 944 (1994); *People v. Campbell,* 29 A.D.3d 601 (2d Dept. 2006); *People v. Jiminez,* 22 A.D.3d 423, 424 (1st Dept. 2005).  Finally, petitioner did not "substantially comply" with the contemporaneous objection requirement, and there are good and important reasons for compelling compliance, as it serves to alert courts to perceived error at a time when the court can address the problem.  Accordingly, because under the *Cotto* factors and established New York law, the contemporaneous objection rule constitutes an independent and adequate ground for precluding habeas review of a claim, this Court is procedurally barred from reviewing this portion of petitioner's prosecutorial misconduct claim.

To overcome this procedural bar and obtain federal review of his claim, petitioner must demonstrate either: (1) cause for the default and prejudice resulting from the alleged constitutional error; or (2) that the failure to consider the federal claim will result in a fundamental miscarriage of justice (i.e., where a

constitutional error has probably resulted in the conviction of someone who is actually innocent). *Coleman v. Thompson*, 501 U.S. at 750; *Wainwright v. Sykes*, 422 U.S. 72, 81, 87 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Murray v. Carrier*, 477 U.S. 478, 494 (1986).

Petitioner makes no attempt to establish either cause or prejudice for failing to preserve the portion of his prosecutorial misconduct claim regarding the prosecutor's call for a "verdict that speak the truth." And, petitioner cannot establish prejudice because, as set forth below, the claim is without merit. *See Capiello v. Hoke*, 698 F. Supp. 1042, 1052 (E.D.N.Y.), *affd.*, 852 F.2d 59 (2d Cir. 1988) (petitioner cannot establish prejudice when defaulted claim is meritless).

Finally, the fundamental miscarriage of justice exception is inapplicable here, because petitioner does not claim he is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Accordingly, the portion of petitioner's prosecutorial misconduct claim alleging that the prosecutor improperly argued during summation that truth and justice were on the People's side must be dismissed as procedurally barred by an adequate and independent state law ground.

## C.    Petitioner's Prosecutorial Misconduct Claim Does Not Entitle Him to Habeas Relief

The prosecutor's contested summation comments and Power Point slides do not entitle petitioner to habeas corpus relief, and petitioner's claim that these comments and slides deprived him of a fair trial is without merit.  It is well settled that the propriety of comments made by a prosecutor at trial and on summation generally does not present a meritorious federal question.  *See Gonzalez v.*

*Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  A prosecutor's remarks, even if improper and beyond the bounds of fair advocacy, would not warrant the granting of a writ unless the remarks caused petitioner substantial prejudice.  *See Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990).  As the Supreme Court has held, it "is not enough that the prosecutor's remarks were undesirable or even universally condemned," *Darden v. Wainright*, 477 U.S. 168, 181 (1986); the relevant question is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a violation of due process."  *Donnelly*, 416 U.S. at 643.

In this case, the Appellate Division held that petitioner received a fair trial, in light of the overwhelming evidence of his guilt, despite the prosecutor's improper vouching for the eyewitnesses, the trial court's error in allowing the prosecutor to show Power Point slides that repeated her claims for the eyewitnesses, and the prosecutor's mischaracterization of a photographic exhibit.  *People v. Bell,* 66 A.D.3d at 1479.  This decision was consistent with Supreme Court law because, as explained below, petitioner would have been convicted even without the prosecutor's contested comments and Power Point slides.

In assessing whether the prosecutor's statements caused petitioner substantial prejudice, this Court should examine "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements."  *U.S. v. Modica,* 663 F.2d 1173, 1181 (2d Cir. 1981); *Celleri v. Marshall*, 07 Civ 4414, 2009 WL 1269754, *18 (E.D.N.Y. May 6,

2009).   Under these criteria, petitioner did not suffer substantial prejudice due to the prosecutor's contested comments and slides.   First, the severity of the prosecutor's conduct "was *de minimis,* in both quantity and significance." *Id.* Petitioner contests only a few discrete statements that were limited to the prosecutor's summation.   (T: 547-49,  551,  553,  558-59,  561,  567).   And, the prosecutor's statements regarding the eyewitnesses' credibility were responsive to petitioner's counsel's own summation comments attacking their credibility, listed above.  (T: 538-43, 545).

The impact of the prosecutor's description of Rodriguez and Elliott as "brave" was *de minimis* as well.  Courts in this Circuit have rejected habeas claims based on the allegedly prejudicial impact of the prosecutor's references during summation to the bravery of the People's witnesses.  In *Quinones v. Burge*, 05 Civ 497S, 2008 WL 728371, *11 (W.D.N.Y. Mar. 18, 2008), petitioner challenged the prosecutor's remarks that a witness was "brave" and "put his own life in jeopardy" by agreeing to testify at petitioner's trial.   *Id.*  The court held that this statement, "although improper. . . was based on trial testimony, including that [the witness] observed Petitioner wantonly spray [his] vehicle with bullets, including one that killed his friend." *Id.*  Similarly, in this case, the prosecutor's description of Rodriguez and Elliott as "brave," although partly an allusion to the witnesses' violent neighborhood, was based mainly on their testimony.   Rodriguez and Elliott testified that petitioner, who they both knew, walked onto the lawn of their neighbor, Bryant, began shooting at Bryant at close range, chased and continued to

23

shoot at Bryant as he ran for safety in his home, and killed him; then, petitioner ran across the street past these women's houses.  (T: 283, 289-90, 391, 444-46, 460, 464-65, 469, 481-84, 489-92).  In effect, the prosecutor argued that Rodriguez and Elliott were brave because they testified against a man who they knew, who had murdered their neighbor in front of them.   In this context, the prosecutor's reference to the witnesses' bravery was based on the evidence and did not cause petitioner substantial prejudice.  *See Affser v. Murray*, 04 Civ 2715, 2008 WL 2909367, *9 (E.D.N.Y. July 28, 2008) (prosecutor's remark on summation that child victim had "bravely" faced assailant in court "[did] not warrant reversal"); *Arhin v. State of New York*, 94 Civ 6921, 1995 WL 672488, *3 (S.D.N.Y. Nov. 9, 1995) (prosecutor's remark during summation that witness was courageous and the jury should reward her courage with a guilty verdict, "may have been improper, [but] it was not so prejudicial so as to render the whole trial 'fundamentally unfair'").

Nor was petitioner substantially prejudiced by the prosecutor's comment that the jury should "render a verdict that speaks the truth." (T: 567).  It is significant that petitioner's counsel – who objected three times during the prosecutor's summation (T: 547, 559, 561) – did not object in this instance.  "The fact that there was no objection to the comment[] underscores that [petitioner's] counsel did not perceive the comment[] to be unfair." *Faison v. McKinney*, 07 Civ 8561, 2009 WL 4729931, *9 (S.D.N.Y. Dec. 10, 2009) (citing *Malley v. Manson,* 547 F.2d 25, 28 (2d Cir. 1976)).  Further, even assuming that the prosecutor's call for a "verdict that speaks the truth" was improper – which respondent does not concede

– it was a single sentence near the end of a summation that took 21 pages to transcribe. The remark was not inflammatory or especially dramatic. It was simply a common entreaty to the jury to return a verdict of guilty. And, to the extent that it purported to describe the workings of the criminal justice system, the remark was entirely fair. As the prosecutor suggested, the jury, as the trier of fact, had the responsibility to determine the true events in the case. *See Evans v. Artuz*, 68 F.Supp.2d 188, 204 (E.D.N.Y. 1999) (prosecutor's comment on summation that the "trial is nothing less than a search for truth" was not improper) (citing *Nix v. Whiteside*, 475 U.S. 157, 171 (1986) (describing trial as "a search for truth")); *see also de la Cruz v. Miller*, 97 Civ 7785, 2000 WL 1279753, *3 (S.D.N.Y. Sept. 8, 2000) (prosecutor's summation remark that trial was "a search for the truth" did not cause petitioner substantial prejudice, and the absence of the statement "would [not] have persuaded a reasonable jury to acquit").

Further, petitioner was not substantially prejudiced by the prosecutor's comment that after the shooting, the police may have erected a pole that appeared in a photographic exhibit (T: 561), which the Appellate Division found to be improper. *People v. Bell,* 66 A.D.3d at 1479. Although "a prosecutor is obligated *not* to misstate testimony or make arguments that lack a basis in the trial proof," *Jackson v. Conway*, 765 F.Supp.2d 192, 259 (W.D.N.Y. 2011), the "severity" of a comment on summation mischaracterizing evidence is "mitigated by [its] brevity and fleeting nature." *Tankleff v. Senkowski,* 135 F.3d 235, 253 (2d Cir. 1998). Here, the prosecutor's single reference to the pole was a fleeting part of her

25

summation argument that the witnesses were able to see the shooting and recognize petitioner. *Id*. The comment was further mitigated when the court overruled petitioner's counsel's objection that there was no testimony that the police had set up the pole, and advised the jury that its "recollection of the testimony is what will control in deliberations." (T: 561-62).

Further, the trial court took "measures [ ] to cure the misconduct." *Modica*, 663 F.2d at 1181. In its jury charge, the court explicitly instructed the jury that the lawyers' summations were not to be considered as evidence. (T: 572-73, 576). The court also emphasized the prosecutor's burden of proof, including the "beyond a reasonable doubt" standard, and petitioner's right to a presumption of innocence. (T: 573-75, 580). The jury was presumed to have followed the court's instructions, *United States v. Downing*, 297 F.3d 52, 59-60 (2d Cir. 2002), which "neutralized" the prejudicial impact of the prosecutor's contested statements and Power Point slides. *Celleri v. Marshall*, 2009 WL 1269754, *18; *see also Williams v. Artus*, 05 Civ 2479, 2006 WL 3694549, *5 (E.D.N.Y. Dec. 13, 2006) (no finding of prosecutorial misconduct, despite absence of objection and curative instruction, where "trial court did instruct the jury that statements made by either counsel during summation do not constitute evidence"); *Skervin v. Graham*, 07 Civ 0240, 2008 WL 5100297, *6 (N.D.N.Y. Nov. 26, 2008) ("In light of the judge's clear and repeated jury instructions, the prosecutor's single remark [that the jury should vindicate the victim's rights] likely did not render petitioner's trial unfair").

Additionally, petitioner's conviction was certain even absent the contested

statements and Power Point slides, because, as the Appellate Division properly found, the evidence of his guilt was overwhelming. *Bell*, 66 A.D.3d at 1479. As the Second Circuit has noted, "often, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial." *Modica,* 663 F.2d at 1181. The evidence in this case demonstrated that on the evening of June 11, 2003, Bryant was sitting in his front yard when his former friend, petitioner, who was wearing grey, and an unidentified man wearing black walked onto Bryant's yard. After a brief argument, petitioner began shooting at Bryant. (T: 285-92, 429-47, 459-74). When the wounded Bryant tried to run away, petitioner pursued him and shot him dead. (T: 373). The street was lit by street lamps and petitioner's face was illuminated by sparks from his gun when he first shot at Bryant. (T: 283, 391, 444-46, 460, 464-65, 483-84, 490-92). From their homes across the street, Rodriguez and Elliott, who knew both Bryant and petitioner, witnessed the shooting, as did Preston, who was sitting with Elliott on her porch. (T: 288, 433-36, 465-66). Rodriguez and Elliott also recognized petitioner as he ran across the street and past their houses. (T: 289-90, 469, 481-82, 489-90).

In light of this overwhelming evidence of guilt, petitioner was not prejudiced by the prosecutor's statement that the police may have erected a pole that appeared in a photograph. (T: 561). Even if this statement mischaracterized the photograph, it did not deny petitioner his right to a fair trial because "[t]he jury heard ample evidence placing Petitioner at the scene of the crime and directly

linking him to the murder." *Pilgrim v. Keane,* 97 Civ 1516, 2004 WL 1810344, *3 (E.D.N.Y. Aug. 9, 2004) (citing *United States v. Nersesian,* 824 F.2d 1294, 1328 (2d Cir. 1987)). Thus, "[p]etitioner has not shown that he was denied a fair trial, since 'it can fairly be said that [his] conviction [ ][was] the result of the jury's assessment of the evidence, not the result of improper argument by the prosecutor'" regarding the evidence. *Id.* (alterations in original)). *See also, Wright v. Conway*, 09 Civ 2967, 08 Civ 1426, 2009 WL 3273901, *17 (E.D.N.Y. Oct. 9, 2009).

Given the overwhelming evidence of guilt, as well as the *de minimis* impact of the prosecutor's contested comments and Power Point slides, and the effect of the trial court's jury instructions, the prejudicial impact of the prosecutor's conduct was "insubstantial," *Modica,* 663 F.2d at 1181, and petitioner would have been convicted even if the prosecutor had not vouched for the witnesses or mischaracterized a photograph. *See Celleri v. Marshall*, 2009 WL 1269754, *18; *Tankleff v. Senkowski*, 135 F.3d at 252; *United States v. LaMorte*, 950 F.2d 80, 83-84 (2d Cir. 1991) (prosecutor's summation comments did not warrant reversal where they were *de minimis* in relation to overwhelming evidence of crime at which comments were addressed).

In sum, as the Appellate Division properly held, the prosecutor's remarks and PowerPoint slides did not deprive petitioner of a fair trial; thus, these errors did not cause petitioner substantial prejudice and do not warrant the granting of habeas relief. Accordingly, this Court should dismiss petitioner's prosecutorial misconduct claim.

# POINT II

## PETITIONER'S UNEXHAUSTED WEIGHT OF THE EVIDENCE CLAIM IS NOT COGNIZABLE ON HABEAS REVIEW.

Petitioner claims, as he did on direct appeal (Exhibit B at 11-14), that he was misidentified by the eyewitnesses and therefore the guilty verdict was against the weight of the evidence. Habeas Pet., ¶13. The Appellate Division rejected this claim without discussing it. *People v. Bell,* 66 A.D.3d at 1479. As explained above, petitioner's weight of the evidence claim is unexhausted but should be deemed exhausted and procedurally barred because: petitioner failed to raise it on direct appeal in constitutional terms and now has no state court mechanism by which he can exhaust the claim (*Grey v. Hoke*, 933 F.2d at 120-121); and he cannot show cause for his default, prejudice resulting therefrom, or actual innocence. *Aparicio v. Artuz*, 269 F.3d at 89-90. Petitioner also is not entitled to habeas review of this claim, because weight of the evidence claims are not cognizable on habeas review.

A weight of the evidence claim is "an error of state law, for which habeas review is not available," because it presents no federal issue. *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5)").[1]

---

12   While legal insufficiency claims are cognizable on habeas review, petitioner does not now raise a claim that the evidence was legally insufficient to support the verdict. *See, e.g., Jackson v. Virginia*, 443 U.S. 307 (1979). Nor did he raise any such claim on direct appeal, where he framed his argument exclusively as a state law weight of the evidence claim. Indeed, in his counseled Appellate Division brief,

Moreover, as the Appellate Division found, the trial evidence supported the jury's conclusion that petitioner was identified as the shooter. *Bell,* 66 A.D.3d at 1479.

Accordingly, this claim should be rejected.

## CONCLUSION

For the reasons set forth above, this Court should summarily deny the petition for a writ of habeas corpus and should not issue a certificate of appealability.

Dated:   New York, New York
          October 7, 2011

<div style="margin-left: 40%;">

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York
<u>Attorney for Respondent</u>

By:

<u>/s/ Paul M. Tarr</u>
PAUL M. TARR
Assistant Attorney General
120 Broadway
New York, New York 10271
(212) 416-8785
Paul.Tarr@ag.ny.gov

</div>

ALYSON J. GILL
PAUL M. TARR
Assistant Attorneys General
 <u>of Counsel</u>

---

petitioner stated that "in this case we do not challenge that the proof rose to the level of legal insufficiency."  Exhibit B at 6.

## DECLARATION OF SERVICE

PAUL M. TARR, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that, on October 7, 2011, he served the annexed memorandum of law and the unreported cases cited therein upon petitioner by having them mailed via the United States Postal Service, to petitioner at the following address:

> Mr. Dennis Bell
> # 03-R-4363
> Southport Correctional Facility
> Box 2000
> Pine City, New York 14871-2000

> /s/ Paul M. Tarr
> PAUL M. TARR
> Assistant Attorney General
> 120 Broadway
> New York, New York 10271
> (212) 416-8785
> Paul.Tarr@ag.ny.gov

Executed on October 7, 2011

31