UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DENNIS BELL,

                    Petitioner,           **DECISION AND ORDER**
                                          **No. 11-CV-6175(MAT)**
          -vs-

PATRICK GRIFFIN,
                    Respondent.

_____

## I.   Introduction

     <u>Pro se</u> petitioner Dennis Bell ("Bell" or "Petitioner"), an
inmate at Elmira Correctional Facility, has filed a petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that
he is being held in Respondent's custody in violation of his
federal constitutional rights. Bell is incarcerated pursuant to a
judgment entered against him on June 7, 2006, in Monroe County
Court of the New York State (Kehoe, J.), following a jury verdict
convicting him of Murder in the Second Degree (New York Penal Law
("P.L.") § 125.25(1)), and Criminal Possession of a Weapon in the
Second Degree (P.L. § 265.03).

## II.  Factual Background and Procedural History

     On June 11, 2003, shortly after 10:00 p.m., in Rochester,
New York, Petitioner and an unidentified man approached Calvin
Bryant ("Bryant"), a former friend of Petitioner's. Bryant was
sitting in his front yard at 573 Maple Street with three of his
friends. The men began to yell at each other, and Petitioner pulled

-1-

out a gun and repeatedly fired at Bryant. Sparks from the gunfire illuminated Petitioner's face. Bryant's three friends ran away in different directions. T.287-89, 432-33, 444-46, 457, 464-65, 483-84, 490-92, 495, 499.[1]

Despite having sustained a serious head wound, Bryant began running towards his house. Petitioner ran after Bryant, continuing to fire, and shot him in the head and neck. After reaching his house, Bryant collapsed inside from the fatal gunshot wounds. T.318-20, 368-69, 373, 434-36, 467. Petitioner then ran across Maple Street, through a driveway between two houses, and out of the area. T.289, 468, 496.

Meanwhile, fourteen-year-old Melissa Rodriguez ("Rodriguez") was at home across the street from the shooting, at 566 Maple Street. There was a street light directly in front of her home. T.278, 283-84. From her second-story bedroom window, she saw Petitioner and his companion approach Bryant and his friends, and also saw Petitioner shoot Bryant. T.279-81, 285, 295, 429, 463, 520. Rodriguez knew both Petitioner and Bryant, who was a friend of her brother's. T.279-80, 304. Rodriguez saw Petitioner's face during the shooting, and again as he ran across Maple Street and through the driveway alongside her house. T.289-90. Rodriguez did

---

[1] Citations to "T.___" refer to pages from the transcript of Petitioner's trial.

not report her observations to the police on the night of the shooting because she was reluctant to get involved. T. 291.

The other eyewitness, Yolanda Elliott ("Elliott"), was sitting on her porch at 562 Maple Street, which was on the same side of the street as Rodriguez's house. She was with her upstairs neighbor, Carrie Preston ("Preston"), along with their landlord and his friend. T.426-28, 459. From the porch, Elliott and Preston saw Petitioner shoot Bryant. Elliott knew both Bryant and Petitioner, who had socialized with her brothers. T.456-57, 461, 482. Elliott testified that she saw Petitioner's face and recognized him as he ran past her house and through the driveway alongside Rodriguez's house. T.469, 481-82, 489-90.

Elliott then called 911 on her cell phone from the porch. T. 470, 485. When the police arrived, Elliott did not inform them that she had seen Petitioner shoot Bryant. T.471. Later that night, however, when someone informed Elliott that Bryant had died, Elliott told that person that Petitioner was the shooter. T.473.

A little over a month later, on July 21, 2003, Investigator Thomas Cassidy ("Cassidy") of the Rochester Police Department visited Rodriguez's house to speak with her regarding an unrelated homicide for which her boyfriend, Israel Miranda, had been arrested. When Cassidy arrived at Rodriguez's house, he noticed that the location of Bryant's shooting was across the street. He accordingly decided to ask Rodriguez about that case as well.

-3-

During his conversation with Rodriguez that day, Rodriguez told Cassidy that Petitioner had shot Bryant. T.301-02, 353-57. Elliott also was interviewed by the police on July 23, 2003, and she informed them that Petitioner was the shooter. T.471-73, 487-89.

Petitioner did not present any witnesses at trial.

The jury returned a verdict on May 11, 2006, finding Petitioner guilty of both counts in the indictment. T.609-10. Petitioner filed a motion to set aside the verdict on the grounds that it was against the weight of the evidence and that the prosecutor improperly vouched for the People's witnesses in her summation. The trial court denied the motion in a ruling issued from the bench on June 7, 2006.  S.2-3.[2]

For the second degree murder conviction, the trial court sentenced Petitioner to a term of 25 years to life. S.10-11. With regard to the weapons-possession conviction, Petitioner received a determinate term of 15 years, to be followed by five years of post-release supervision. S.11-12. These sentences were set to run consecutively to an unrelated sentence which Bell was then serving for attempted second degree robbery. S.12.

Represented by new counsel on direct appeal, Petitioner argued that (1) the prosecutor committed misconduct during summation when

---

[2]    Citations to "S.__" refer to pages from the transcript of Petitioner's sentencing hearing.

-4-

she (a) vouched for the credibility of the witnesses by stating that they were credible, accurate, and brave for testifying, and showing a PowerPoint presentation calling them truthful, credible, and accurate; (b) argued that truth and justice were on the side of the prosecution; and (c) claimed that a pole depicted in a photographic exhibit that may have obstructed the witnesses' views was not there at the time of the shooting; and (2) the verdict was against the weight of the evidence.

On October 2, 2009, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction. People v. Bell, 66 A.D.3d 1478 (4th Dept. 2009). The New York Court of Appeals denied leave to appeal on January 6, 2010. People v. Bell, 13 N.Y.3d 937 (2010).

This timely habeas petition followed in which Bell asserts that various incidents of prosecutorial misconduct deprived him of his due process right to a fair trial and that the verdict was against the weight of the credible evidence.

For the reasons that follow, Bell's request for a writ of habeas corpus is denied, and the petition is dismissed.

**III. Standard of Review**

For federal constitutional claims adjudicated on the merits by a state court, a reviewing court applies the deferential standard of review codified in the 1996 amendments to 28 U.S.C. § 2254(d). A habeas petitioner can only obtain habeas corpus relief by showing

that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

## IV. Analysis of the Petition

### A. Prosecutorial Misconduct During Summation

#### 1. The Attorneys' Summations and the Trial Court's Jury Instructions

During his summation, defense counsel argued that Petitioner had been misidentified, asserting that the eyewitnesses' testimony was inconsistent and unreliable, and that the flash from Petitioner's gun provided insufficient illumination to allow the eyewitnesses to see Petitioner's face. T.538-45. Defense counsel emphasized several discrepancies between the witnesses' testimony, in particular, that Elliott had testified Petitioner was wearing his hood during the shooting, while Preston testified that the hood was halfway up, and Rodriguez could not recall whether the hood was up or down. T.539. In addition, defense counsel noted, Elliott's testimony that she called 911 from her porch was contradicted by Preston's testimony that Elliott went inside the house to call 911. T.542-43. Defense counsel also asserted that the eyewitnesses were too far away to see Petitioner and that their view was obstructed by trees. T.540. Defense counsel stated that from her vantage

point, Elliott only could have seen the victim's back during the shooting. T.541.    In addition, defense counsel challenged Rodriguez's credibility on the basis that she was unable to remember certain details of the events surrounding the shooting. T.545.

During her summation, the prosecutor described the two chief eyewitnesses, Rodriguez and Elliott, as credible, accurate, and brave for their willingness to testify. T.553, 558-59, 561. The prosecutor argued that these women had nothing to gain from testifying except "fear," because they lived on a street where people shot other people without bothering to cover their faces. T.549, 551, 558, 567. After the trial court overruled defense counsel's objection, the prosecutor showed the jury PowerPoint slides that summarized the evidence while simultaneously describing Rodriguez and Elliott as truthful, credible, and accurate. See T.547-48. The prosecutor also argued, over defense counsel's objection, that a white pole on Elliot's porch depicted in a photographic exhibit was not there on the night of the shooting and was probably erected by the police after the incident, stating that there were other photographs of the porch, and "nowhere on the top left-hand side of the porch is a white pole." T.561. Trial counsel objected, noting that there had been no testimony from the police officers regarding when the pole was erected. T.561. The trial judge overruled the objection, but stated that the "[j]ury's

recollection of the evidence is what will control in deliberations." T.561-62. Finally, the prosecutor asked the jury to "render a verdict that speaks the truth, a verdict of guilty." T.567. Defense counsel did not object to this remark.

During the final charge, the trial court instructed the jury that summations were not evidence, and that the jury could reject any argument by counsel that it found to be unreasonable or illogical. T.572-73, 576. The trial court also stated that Petitioner was presumed innocent and the prosecution bore the burden of proving his guilt beyond a reasonable doubt. T.573-75, 580. The jury was told that it could consider whether the witnesses were able to see or hear the events about which they testified, whether they could recall those events, and whether their testimony was plausible and consistent with other testimony in the case. T.577-78. Because the prosecution's case relied on eyewitness testimony, the trial court instructed the jury that it should "focus principally" on the opportunity Rodriguez and Elliott had to observe the appearance of the shooter, and whether these witnesses had the mental capacity to reason and to remember what they observed. T.581-84.

## 2.   The State Appellate Court's Ruling

The Fourth Department agreed with Bell that the prosecutor had improperly vouched for the credibility of the eyewitnesses, and that the trial court compounded this error by allowing the

prosecutor "to enhance the effect of her improper comments by using computer slides." People v. Bell, 885 N.Y.S.2d at 842 (citations omitted). The Fourth Department also agreed that the prosecutor mischaracterized one of the photographs admitted in evidence. Id. (citation omitted). Nevertheless, the Fourth Department concluded, "those instances of misconduct during the prosecutor's summation did not deprive defendant of his fundamental right to a fair trial" because "the evidence of defendant's guilt [was] overwhelming and . . . there [was] no reasonable possibility that the error might have contributed to [his] conviction[.]" Id. (citation omitted). The Fourth Department thus adjudicated Bell's claims of vouching and mischaracterization of the evidence on the merits, and the Court must analyze these claims under 28 U.S.C. § 2254(d)(1). See Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001) (AEDPA's deferential standard of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision).

With regard to the remainder of the comments on summation that Bell contended on direct appeal were improper, the Fourth Department held that his contentions were not preserved for review due to the lack of timely objections. People v. Bell, 66 A.D.3d at 1479 (citing N.Y. CRIM. PROC. LAW § 470.05(2); other citations omitted). The Fourth Department declined to exercise its power to

review the contention with respect to those unpreserved comments as a matter of discretion in the interest of justice. Id. (citing N.Y. CRIM. PROC. LAW § 470.15(6)(a)). Respondent argues that these claims are procedurally defaulted under the adequate and independent state ground doctrine. See, e.g., Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (stating that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim") (quotation marks and citations omitted). The Court turns first to the claims of vouching and mischaracterization of the evidence, which were adjudicated on the merits.

### 3.   Application of 28 U.S.C. § 2254(d)(1)

The Appellate Division's decision was not "contrary to" any clearly established Supreme Court precedent, so Bell's only avenue for relief is to meet the "unreasonable application" standard of review set forth in 28 U.S.C. § 2254(d)(1). A state court decision involves an "unreasonable application" of Supreme Court precedent when the state court either "identifies the correct governing legal rule" from the Supreme Court's cases but "unreasonably applies it to the facts" of the case, or "unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle

to a new context where it should apply." <u>Williams v. Taylor</u>, 529 U.S. 362, 407 (2000).

This court sitting in federal habeas review does not possess supervisory powers over state court trials. <u>See</u> <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (citing <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642 (1974)). As the Supreme Court has observed, the appropriate standard of review for a claim of prosecutorial misconduct brought by a habeas petitioner is "'the narrow one of due process, and not the broad exercise of supervisory power.'" <u>Id.</u> (quoting <u>Donnelly</u>, 416 U.S. at 642); <u>accord</u>, <u>e.g.</u>, <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2d Cir. 1990). The "touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982). That is, for habeas relief to be granted on the basis of prosecutorial misconduct during summation, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Darden</u>, 477 U.S. at 181 (quoting <u>Donnelly</u>, 416 U.S. at 643).

Although the Supreme Court has recognized that certain types of prosecutorial misconduct, if severe and pervasive, can violate the Due Process Clause, <u>see</u>, <u>e.g.</u>, <u>Donnelly</u>, 416 U.S. at 643; <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959) (presentation of knowingly

false testimony),[3] it has never condemned the practice of vouching under due process principles.  The Supreme Court's only occasion to address this area specifically was United States v. Young, 470 U.S. 1 (1985), a federal prosecution in which the prosecutor shared with the jury his "personal impression" that the defendant intended to commit fraud. The Supreme Court explained the dangers inherent in prosecutorial vouching as follows:

> prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

Id. at 18-19 (citing Berger v. United States, 295 U.S. 78, 88-89 (1935)).

Examining the conduct of Young's criminal proceedings in toto, the Supreme Court declined to find that the prosecutor's remark constituted plain error. In reaching this conclusion, the Supreme Court noted that a prosecutor violates rules of professional conduct by expressing his personal belief as to the truth or falsity of any testimony or evidence concerning the guilt of the

---

[3]

    Cf. Griffin v. California, 380 U.S. 609, 615 (1965) (The Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.").

defendant. 470 U.S. at 7. The concerns underlying its "reactions against improper prosecutorial arguments to the jury" were implicated in Young, the Supreme Court concluded, but it was not done "to the extent that . . . the jury's deliberations were compromised." 470 U.S. at 18.

Here, although improper, the prosecutor's characterization of the witnesses as reliable and brave did not contain any suggestion that she was relying on information outside the evidence presented at trial. Instead, the remarks were based on the prosecutor's own interpretation of the witnesses' testimony: Rodriguez and Elliott testified that Petitioner, whom they both knew, walked onto the lawn of one of their neighbors; began shooting at Bryant, whom they also knew, at close range; and chased Bryant and continued to shoot at him as he attempted to reach the safety of his home. Petitioner then ran across the street past these two individuals' houses. See T.283, 289-90, 391, 444-46, 460, 464-65, 469, 481-84, 489-92. In effect, the prosecutor argued that Rodriguez and Elliott were brave because they testified against a man whom they knew, and whom they saw fatally shoot their neighbor in front of them. Although it was improper for the prosecutor to express his personal opinion about the credibility of the witnesses, Young, 470 U.S. at 19 (citation omitted), "when viewed in context, the prosecutor's remarks cannot be read as implying that the prosecutor had access to evidence outside the record." Id.

-13-

Young was a case that reached the Supreme Court on direct review, while Bell's case is before this Court on collateral review and, moreover, is subject to the deferential AEDPA standard. Under these circumstances, the Court cannot conclude that Fourth Department's rejection of Bell's contention concerning prosecutorial vouching amounted to an objectively unreasonable application of clearly established Federal law. See Arhin v. State of New York, 94 Civ 6921, 1995 WL 672488, at *3 (S.D.N.Y. Nov. 9, 1995) (prosecutor's remark during summation that witness was courageous and the jury should reward her courage with a guilty verdict, "may have been improper, [but] it was not so prejudicial so as to render the whole trial 'fundamentally unfair'") (quotation omitted).

### 4. Mischaracterization of the Evidence

As noted above, the Fourth Department agreed with Petitioner that during her summation, the prosecutor mischaracterized one of the photographs in evidence. Nevertheless, the Fourth Department concluded, the error was harmless in that there was no reasonable possibility it could have affected the verdict. Bell, 66 A.D.3d at 1479 (citations omitted). This ruling constitutes an "adjudication on the merits" of the claim subject to 28 U.S.C. § 2254(d)(1).

"The Supreme Court has long condemned 'egregious [prosecutorial] misconduct' such as 'manipulation of the evidence.'" Miranda v. Bennett, 322 F.3d 171, 181 (2d Cir. 2003)

(quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. at 647; citing <u>id.</u> at 646-48 (discussing <u>Miller v. Pate</u>, 386 U.S. 1, 6-7 (1967)) (prosecutor's knowing misrepresentation of the nature of proffered evidence); other citation in <u>Donnelly</u> omitted)). Here, the prosecutor's remark was grounded, at least in part, in what she perceived the evidence to be-that several of the photographs did not depict a pole. Thus, it does not appear to be a blatant misstatement of the evidence by the prosecutor. Furthermore, the trial court, although overruling defense counsel's objection, contemporaneously reminded the jurors that it was their recollection of the testimony and evidence that controlled. On the record before the Court, this isolated incident of mischaracterizing the evidence could not have "so infected the trial with unfairness as to make the resulting conviction a denial of due process," <u>Donnelly</u>, 416 U.S. at 643. In other words, the Court is not "persuaded that the challenged argument seriously affected the fairness of the trial." <u>Young</u>, 470 U.S. at 20.

### 5. Unpreserved Claims of Prosecutorial Misconduct

The Fourth Department held that several of Petitioner's challenges to the prosecutor's remarks during summation (e.g., that the jury should "render a verdict that speaks the truth," T.567), were unpreserved because trial counsel had failed to object. In general, habeas review of a federal issue is precluded when the last state court's ruling on the claim rested upon "a

state law ground that is independent of the federal question and adequate to support the judgment." <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991). Respondent argues that the Fourth Department's ruling rested upon an adequate and independent state ground, namely, the contemporaneous objection rule codified at C.P.L. § 470.05(2). Respondent contends that these prosecutorial misconduct claims accordingly are procedurally defaulted.

Under the contemporaneous objection rule, a claim of error can be preserved for appellate review in two ways: by a party making a specific protest at a time when the trial court has an opportunity effectively to correct the error; or by the court expressly deciding the issue in response to a protest by the party claiming error on appeal. <u>See</u> N.Y. Crim. Proc. Law § 470.05(2). Although only a "firmly established and regularly followed state practice," <u>James v. Kentucky</u>, 466 U.S. 341, 348-49 (1984), may be interposed by a state to prevent subsequent review of a federal constitutional claim, the New York procedural rule applied by the Fourth Department in Bell's case–that a party must preserve an issue with a specific, contemporaneous objection–has been recognized as such a firmly established and regularly followed rule. <u>See</u>, <u>e.g.</u>, <u>Garvey v. Duncan</u>, 485 F.3d 709, 714-715 (2d Cir. 2007) ("New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error.") (citations omitted). The Second Circuit has specifically

-16-

held, with regard to claims of prosecutorial misconduct, that C.P.L. § 470.05(2) constitutes an adequate and independent state ground. See Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996) (holding that defense counsel's failure to object to the prosecutor's comments in the opening statement and on cross-examination constituted an adequate and independent state ground).

Because there is an adequate and independent finding by the Fourth Department that Bell procedurally defaulted on this claim, Bell would have to show in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. at 750. This he cannot do.

To establish legal cause for his procedural default, Bell must show that some objective external factor impeded his ability to comply with New York's procedural rules. Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Restrepo v. Kelly, 178 F.3d 634, 638 (2d Cir. 1999). Examples of external factors include interference by state officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal. Murray, 477 U.S. at 488. An attorney's mere ignorance or inadvertence is not cause, however, since the attorney is considered the defendant's agent when acting, or

-17-

failing to act, in furtherance of the litigation, and the defendant must "'bear the risk of attorney error.'" Coleman, 501 U.S. at 753 (quoting Murray, 477 U.S. at 488). Petitioner has not shown that any objective external factor impeded his ability to comply with the contemporaneous objection rule, that state officials interfered with his attempt to assert the claim, or that he was not afforded effective assistance of counsel with regard to the failure to preserve the prosecutorial misconduct claim.

Given that Bell cannot establish cause for the default, this Court need not decide whether he also suffered actual prejudice as to this claim because federal habeas relief on the basis of a procedurally defaulted claim is unavailable unless both cause and prejudice are demonstrated. See, e.g., Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not Stepney showed prejudice.").

Turning to the "fundamental miscarriage of justice" exception, the Court notes that this requires a demonstration of "actual innocence." E.g., Calderon v. Thompson, 523 U.S. 538, 559 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992) ("The miscarriage of justice exception is concerned with actual as compared to legal innocence.")). The Supreme Court has emphasized

-18-

that the exception has a "narrow scope," Sawyer, 505 U.S. at 339. "To be credible," a claim of actual innocence must be based on reliable evidence not presented at trial[,]" Schlup v. Delo, 513 U.S. 298, 324 (1995); accord Calderon, 505 U.S. at 339. The question of actual innocence "depends on whether it is more likely than not that no reasonable juror would have concluded that [Bell] engaged in conduct that meets the required elements of each of the charges." Sweet v. Bennett, 353 F.3d 135, 142 (2d Cir. 2003) (citing Bousley v. United States, 523 U.S. 614, 623 (1998)). Bell has not come forward with any evidence which would have undermined the compelling proof of guilt presented at trial. The fundamental miscarriage of justice exception is thus not available to Bell. The unpreserved claims of prosecutorial misconduct accordingly are dismissed as subject to an unexcused procedural default.

### B.   Verdict Against the Weight of the Evidence

Bell's "weight of the evidence" claim derives from C.P.L. § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5). Thus, a "weight of the evidence" argument is a state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a "weight of

the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. See 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Estelle v. McGuire, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that such claims do not present any federal constitutional issues cognizable in a habeas proceeding. E.g., Ex parte Craig, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), aff'd, 263 U.S. 255, 44 S. Ct. 103, 68 L. Ed. 293 (1923); see also Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (denying habeas petitioner's claim of insufficient evidence based on the jury's failure to properly determine witness credibility and weigh evidence because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal"). In keeping with these precedents, the Court finds that Bell's weight-of-the-evidence claim fails to present a cognizable constitutional question amenable to habeas review and must be dismissed on that basis.

## V.   Conclusion

For the reasons stated above, Dennis Bell's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Bell has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 445-46 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
Honorable Michael A. Telesca
United States District Judge

Dated:     Rochester, New York
           May 2, 2012